907 So.2d 591 (2005)
MIAMI-DADE COUNTY, Appellant,
v.
GOVERNMENT SUPERVISORS ASSOCIATION OF FLORIDA, OPEIU AFL-CIO, LOCAL 100, Appellee.
No. 3D03-2907.
District Court of Appeal of Florida, Third District.
July 20, 2005.
Robert A. Ginsburg, Miami-Dade County Attorney, and Eric A. Rodriguez, Assistant County Attorney, for appellant.
Sugarman & Susskind, P.A., Coral Gables, and Robert H. Sugarman and Marcus Braswell, for appellee.
Before COPE, C.J.,[*] and WELLS and SHEPHERD, JJ.
*592 SHEPHERD, J.
This is an appeal of a Public Employee Relations Commission (PERC) order finding that Miami-Dade County committed an unfair labor practice. We have jurisdiction, Art. V, § 4(b)(1) Fla. Const.; § 447.504(1), Fla. Stat. (2004), and reverse.
Miami-Dade County operates Miami International Airport (MIA). The County's Aviation Department is charged with the day-to-day management of MIA. The Department hosts a protocol office which serves as a liaison for ambassadors, prime ministers, and other diplomats and dignitaries traveling through MIA. Approximately eight employees are assigned to the office, which is managed by Irving Fourcand. These employees are included under a Collective Bargaining Agreement (CBA) between the County and the Government Supervisors Association of Florida Office and Professional Employees International Union, AFL-CIO, Local 100 (the union).
In January 2002, Fourcand informed the eight protocol officers that he was considering implementing a five-day-per-week, eight-hour-per-day work schedule for the officers because their current four-day-per-week, ten-hour-per-day work schedule was not meeting operational needs. However, in an effort to accommodate the current four-day-per-week schedule preferred by most of the officers, Fourcand determined that he would try a beeper policy before making the change. Thus, each protocol officer would be required in rotation to have a beeper to respond to requests for service on an overtime basis when called.
One of the protocol officers complained to the union about the proposed beeper policy. The union took the position that if the County wished to implement such a policy, the beeper-wearer had to be paid overtime for simply wearing the beeper. For expense reasons, Fourcand returned to his initial idea of implementing a traditional forty-hour-per-week work schedule.
Thereafter, Fourcand reprimanded Misky Balarezo, a protocol officer, for failing to meet an important dignitary from a flight. Other protocol officers complained about the new schedule and allegedly, Fourcand responded, "That's what you get for going to the union," referring apparently to the beeper offer. Based on the meeting with the protocol officers, Fourcand's alleged statement, the reprimand of Balarezo, and other assorted conflicts, the union brought a charge with PERC, alleging that the County committed an unfair labor practice by retaliating against certain protocol officers for protected union activity and implementing a schedule change. Notably, the charge did not allege that the protocol officers' work schedule was a mandatory subject of bargaining or that the County refused a request to bargain collectively regarding the schedule change.
The hearing officer found that the County did not retaliate against the protocol officers by implementing the work schedule change or reprimanding Balarezo. However, in a rather puzzling move, the hearing officer inexplicably relied on section 447.501(1)(c) of the Florida Statutes, to find that the County committed an unfair labor practice because it implemented the schedule change without bargaining with the local union.[1] The hearing officer *593 subsequently denied the County's request to consider its exceptions to the findings. This appeal of the Final Order and an order denying the County's Motion for Commission to Supercede the Final Order followed.
We review this matter de novo. Doyle v. Dept. of Bus. Reg., 794 So.2d 686 (Fla. 1st DCA 2001).
We agree with the hearing officer's finding that the County did not retaliate against the protocol officers by implementing the change in work schedule or by reprimanding Balarezo. However, we disagree with the hearing officer's conclusion that the County committed an unfair labor practice because it implemented a change without bargaining with the union.
First, there was no evidence to suggest that Fourcand had a duty to bargain as to this particular aspect of rescheduling operational shifts, failed to bargain, or that his change was unilateral. To the contrary, the undisputed evidence shows that Fourcand's implementation of the new work schedule followed a meeting regarding the failed beeper policy. His decision was not independent, made in a vacuum, or ignorant of the forces that be. More to the point, the issue of "one-sidedness" to revising the work schedule was not before the Commission. Accordingly, the Final Order was erroneous because neither the Commission nor the hearing officer had jurisdiction to rule on a claim not presented or argued by the parties. Due process dictates that parties are entitled to have decisions on claims that are actually litigated and properly raised before a tribunal. Clemente v. B & B Chem. Co., 480 So.2d 257 (Fla. 3d DCA 1985).
Second, the hearing officer's conclusion violates the express language of the CBA, Articles 30 and 49, which give the County the exclusive right to modify work schedules. See Hialeah Int'l. Assoc. of Firefighters v. City of Hialeah, 9 FEPR P 14364 (1983) (fire union's charge alleging that city, through its fire chief, unlawfully changed firefighters' shift schedule without prior negotiations, was dismissed where parties' contract expressly provided that fire chief had authority to schedule operations and shifts); Sarasota Prof'l Firefighters v. City of Sarasota, 13 FPER P 18033 (1986)(CBA does not guarantee a certain number of hours of work per day); General Serv. Employees Local 747 v. City of West Palm Beach, 14 FPER P 19114 (1988)(county had the right to change work schedules based on the plain language of the CBA). The Order below contradicts the express language of the CBA and therefore violates the County's right achieved through the collective bargaining process. See also City of Jacksonville v. Jacksonville Supervisor's Assoc., 791 So.2d 508 (Fla. 1st DCA 2001) (city did not engage in unfair labor practice by not participating in impact bargaining over transfer of bargaining unit work during departmental reorganization).
In our consideration of this issue, the union has asked us to show deference to PERC's contrary interpretation of the CBA as contained in the Final Order, which in turn adopts the findings and conclusions of the hearing officer. Initially, we note that "our review standard over an agency's interpretation of law is that of clearly erroneous, meaning that the interpretation will be upheld if the agency's construction falls within the permissible *594 range of interpretations." Colbert v. Dept. of Health, 890 So.2d 1165, 1166 (Fla. 1st DCA 2004). However, "[i]f ... the agency's interpretation conflicts with the plain and ordinary intent of the law, judicial deference need not be given to it." Id., citing Florida Hosp. v. Agency for Health Care Admin., 823 So.2d 844, 848 (Fla. 1st DCA 2002)("a court need not defer to an agency's construction or application of a statute if special agency expertise is not required or if the agency's interpretation conflicts with the plain and ordinary meaning of the statute"). See also And Justice for All, Inc. v. Fla. Dept. of Ins., 799 So.2d 1076 (Fla. 1st DCA 2001) (less deference given in cases where an agency is departing from the traditional definition of a word).
We find the issue raised to be one of simple contract interpretation requiring no agency expertise. Thus, we decline to give PERC's interpretation of the CBA deference in this case. A plain reading of the CBA reflects that "The County, at its discretion, shall have the sole right and authority to determine, amend, change or modify employees['] work schedules," and that employees "[may] be assigned or transferred to work schedules at the sole discretion of the County." Art. 30(3), CBA. Article 49(1) of the CBA expressly recognizes that "management possesses the sole right, duty and responsibility to... direct the work force ... to carry out [the County's] responsibilities and missions...." In so doing, the County specifically reserved the "right and authority to... [s]chedule operations and shifts." Art. 49(3)(g), CBA. More specially, Article 49(1) contains a waiver provision: "Any term and condition of employment other than wages and benefits not specifically established or modified by the Agreement shall remain solely within the discretion of the County to modify, establish or eliminate" (emphasis added).
In our view, it would require a tortured reading of these provisions to conclude, as the union would have us do, that the County has the discretion to regulate all non-wage and non-benefit conditions of employment except for the length and number of workdays per week. We find that PERC's interpretation to the contrary is clearly erroneous and fails to give the employer here the benefit of its bargain. Accordingly, we reverse the orders on appeal to the extent that they find that the County committed an unfair labor practice by changing the work schedules of the airport protocol officers.
Reversed.
NOTES
[*] Did not participate in oral argument.
[1] Section 447.501(1)(c) of the Florida Statutes, which prohibits a public employer from refusing to bargain collectively, is identified at the foot of the charge form and in the final sentence of the attachment thereto as one of three statutory bases supporting the charge, the other two being subsections (a) and (b). However, a fair reading of the charge reflects that it is a retaliation claim. This conclusion is supported by union counsel statements at the administrative hearing, a review of the evidence presented and the fact that the union did not propose any conclusions in their proposed final order relating to a section 447.501(1)(c) claim. To the contrary, the union's case rested primarily on sections 447.501(1)(a) and (b), which involve interfering with or discouraging union membership.