921 So.2d 676 (2006)
FLORIDA PUBLIC EMPLOYEES COUNCIL 79, AFSCME, AFL-CIO, Appellant,
v.
STATE of Florida, John Ellis Bush as Governor, Appellee.
No. 1D04-5066.
District Court of Appeal of Florida, First District.
January 24, 2006.
Rehearing Denied March 2, 2006.
*677 Jerry G. Traynham of Patterson & Traynham, Tallahassee, for Appellant.
Michael Mattimore and Brian Koji of Allen, Norton & Blue, P.A. and Steve Godwin, Deputy General Counsel, Department of Management Services, Tallahassee, for Appellee.
VAN NORTWICK, J.
Florida Public Employees Council 79, AFSCME, AFL-CIO (the union) challenges a final order of the Public Employees Relations Commission (PERC) dismissing an unfair labor practice (ULP) charge against the State of Florida. The union charged, in pertinent part, that the state had committed a ULP by refusing to arbitrate a particular grievance concerning the layoff of some toll collectors working for the Department of Transportation (DOT). The union added that, as a matter of policy, it would constitute a ULP for the state to refuse to arbitrate any similar grievance which concerned the layoff provision contained in Article 8 of the parties' collective bargaining agreement (CBA). In the order appealed, PERC ruled that the layoff rule, which is part of Chapter 60K-17, Florida Administrative Code, a regulation incorporated by reference into Article 8, had been repealed by the "Service First" legislation, Chapter 2001-43, Laws of Florida. That legislation required the repeal of the career service rules, and, in particular, mandated the deletion of any layoff rule containing a "bumping" provision. See § 110.227(2), Florida Statutes (2001). As a result, PERC determined that Article 8 could no longer be enforced under the savings clause contained in Article 33 of the CBA, and, thus, the DOT workers had no grievance. We disagree and hold that, because Chapter 60K-17 remained valid during the applicable time governing the ULP charge brought by the *678 DOT toll collectors, PERC erred in dismissing the ULP.
The state and the union negotiated and ratified a master contract, the CBA, for the period July 1, 1998 through June 30, 2001. This contract contains the following two pertinent provisions:
Article 8
WORKFORCE REDUCTION AND PRIVATIZATION
SECTION 1Layoffs
(A) When unit employees are to be laid off as defined in the Florida Statutes, the State shall implement such layoff in accordance with the provisions of Chapter 60K-17 of the Personnel Rules of the Career Service System....
* * *
Article 33
SAVINGS CLAUSE
(A) If any provision of this Contract is in contravention of the laws or regulations of the United States or of this State, by reason of any court action or existing or subsequently enacted legislation; or if the appropriate governmental body having amendatory power to change a law, rule or regulation which is in conflict with a provision of this Contract fails to enact or adopt an enabling amendment to make the provision effective in accordance with section 447.309(3), Florida Statutes; then such provision shall not be applicable, performed or enforced; but the remaining parts or portions of this Contract shall remain in full force and effect for the term of this Contract.
(B) If any provision of this Contract is found to have the effect of causing the State to be denied funds otherwise available through federal funding, then such provision shall not be applicable, performed or enforced.
Chapter 60K-17, Florida Administrative Code, which formerly governed workforce reduction, contained a "bumping" provision in Rule 60K-17.004(3)(g). However, when the 2001 Legislature enacted the Service First legislation, section 110.227(2) was amended to read:
The department shall establish rules and procedures for the suspension, reduction in pay, transfer, layoff, demotion and dismissal of employees in the career service. Except with regard to law enforcement or correctional officers, firefighters or professional health care providers, rules regarding layoff procedures shall not include any system whereby a career service employee with greater seniority has the option of selecting a different position not being eliminated, but either vacant or already occupied by an employee of less seniority, and taking that position, commonly referred to as "bumping." For the implementation of layoffs as defined in s. 110.203, the department shall develop rules requiring that consideration be given to comparative merit, demonstrated skills, and employee's experience. Such rules shall be approved by the Administration Commission prior to their adoption by the department.
Ch. 2001-43, § 21 at 196, Laws of Fla. (underlined to show revisions). This amendment became effective upon the act becoming law on May 14, 2001. Id. at § 50 at pg. 212. In section 42 of Chapter 2001-43, the legislature mandated the Department of Management Services to adopt rules to give effect to its amendments to Chapter 110. Section 42 provided:
The Department of Management Services shall adopt rules as necessary to effectuate the provisions of chapter 110, Florida Statutes, as amended by this act, and in accordance with the authority granted to the department in chapter *679 110, Florida Statutes. All existing rules relating to chapter 110, Florida Statutes, are statutorily repealed January 1, 2002 unless otherwise readopted.
Ch. 2001-43, § 42 at 208, Laws of Fla. (underlined to show revisions).
The union filed a grievance on behalf of certain toll collectors working for DOT on May 31, 2001, alleging a violation of Article 8 based on the state's failure to follow Chapter 60K-17 when it laid off toll collection employees assigned to the Miami-Dade Expressway Toll Plazas effective June 30, 2001.[1] A few months later, rule 60L-33.004 was adopted, effective January 1, 2002, implementing a new procedure for imposing layoffs.
The grievance proceeded through the designated steps to arbitration. Arbitration was stayed, however, pending the outcome of litigation challenging the constitutionality of the Service First legislation. After that litigation culminated in this court's opinion in Florida Public Employees Council 79, AFSCME v. Bush, 860 So.2d 992 (Fla. 1st DCA 2003), the grievance was rescheduled for arbitration. Thereafter, the state refused to arbitrate taking the position "that DOT laid off the toll collector employees in accordance with Section 110.227(2), Florida Statutes, which became effective on May 14, 2001 and superceded Rule 60K-17, F.A.C. Therefore, the DOT did not violate Article 8 of the Master Contract."
The union filed a ULP alleging that the state had violated sections 447.501(1)(a), (c) and (f), Florida Statutes (2001). PERC's general counsel reviewed the charge pursuant to section 447.503(2) and rule 60CC-5.002. The general counsel accepted the reasoning of the state that Article 8, by requiring adherence to former Chapter 60K-17 and allowing "bumping" rights, was in contravention of section 110.227(2). Therefore, pursuant to Article 33, Article 8's adherence to Chapter 60K-17 could not be enforced. The general counsel determined that, by agreeing to Article 33, the union had contractually waived enforcement of Article 8 because it was in contravention of subsequently enacted law. See Florida Public Employee's Council 79, AFSCME v. State of Florida, 10 FPER ¶ 15208 at 413 (1984), affirmed, 472 So.2d 1184 (Fla. 1st DCA 1985)("If AFSCME, through precise contractual language, conferred upon the State the power of unilateral decision on this particular term of employment, then a contractual waiver has occurred."). The general counsel reasoned that any bumping rights that existed were eliminated when Chapter 60K-17 was repealed effective May 14, 2001, ending the employees' rights under Article 8. The general counsel concluded that, because the matter could not be grieved, there was no ULP when the state refused to participate in the arbitration.
The union filed an amended ULP arguing PERC's longstanding precedent that, where a collective bargaining agreement adopts by reference a career service rule, the rule applies as though the text had been written verbatim into the contract as it existed on the date of ratification. See Florida Police Benevolent Ass'n v. State of Florida, 7 FPER ¶ 12051 at 121-22 (1980)(where the contract refers to career *680 service rules, the parties are bound by the personnel rules "as they existed at the time of the execution of the contract."). Accordingly, the union argued that the subsequent repeal of Chapter 60K-17 had no effect on the parties' contract as it existed both before its expiration or after, during the parties' "status quo" relationship. Further, attaching the affidavit of the union's labor lawyer, the union contended that the parties, in the past administration of their CBA, continued to apply old personnel rules regardless of the old rule's repeal or revision.
The general counsel issued an order of summary dismissal of the amended ULP rejecting the argument that the old personnel rules could be applied regardless of their repeal or revision. The general counsel reasoned that, because Article 33 expressly contemplated changes to the personnel rules by statute, there was a contractual waiver of the right to bargain the bumping provision. The general counsel concluded that Article 33 "conferred upon the State the power of unilateral decision on this particular term of employment." The union appealed.
In the order under review, PERC adopted the rationale of the general counsel for dismissing the case, stating as follows:
The Service First legislation enacted in 2001 repealed the State's personnel rules, including its layoff rule. As part of that legislation, section 110.227(2), Florida Statutes (2001), prohibited replacing the layoff rule with one that included bumping rights for career service employees other than law enforcement or correctional officers, firefighters, or professional health care providers. The State canceled AFSCME's pending grievance because it relied upon a layoff rule containing bumping rights that the State believed had been extinguished by the Service First legislation and, therefore, could no longer be enforced under the savings clause of the parties' collective bargaining agreement.
The General Counsel agreed with the State's interpretation of the law and the provisions of its contract with AFSCME and dismissed AFSCME's charge. The General Counsel concluded that an employer does not engage in an unlawful refusal to participate in the grievance procedure if the matter cannot be grieved. We adopt the General Counsel's rationale for dismissing this case.
On appeal, the union argues that, as a matter of labor law policy, the state agreed to be bound by Chapter 60K-17 as it existed when the parties executed their contract despite whatever changes the legislature subsequently made to the career service rules. See Florida Police Benevolent Ass'n v. State of Florida, 7 FPER ¶ 12051 at 121-22 (1980). However, the union submits that the court need not decide this broader issue, but can decide this case on the more narrow ground that, during the applicable time governing the ULP charge by the DOT toll workers, Chapter 60K-17 remained in effect and governed the conduct of the parties. We agree and focus our attention on that narrow question.
The state responds that PERC's interpretation of the Public Employees Relations Act (PERA) and labor law is entitled to substantial deference. As stated in City of Clearwater v. Lewis, 404 So.2d 1156, 1162 (Fla. 2d DCA 1981):
Thus, an expert tribunal such as PERC is entitled to substantial deference in recognition of its special competence with dealing with labor problems. It is not our province to displace its choice between two conflicting views simply because we would have been justified in deciding the issue differently were it before us in the first instance.
*681 Therefore, the state urges this court to affirm PERC's decision that the layoff action in this case was administered in accordance with section 110.227(2), which became effective on May 14, 2001 and superseded Chapter 60K-17, because it is not clearly erroneous.
Our review in this case is de novo. See Miami-Dade County v. Government Supervisors Ass'n of Florida, OPEIU AFL-CIO Local 100, 907 So.2d 591, 593 (Fla. 3d DCA 2005). While we acknowledge the case law that accords deference to PERC and warns that PERC's interpretation of the law should not be reversed unless clearly erroneous, we are persuaded that this case law is not applicable here. We do not have to accord deference to PERC's interpretation of the law where that interpretation conflicts with the plain and ordinary meaning of the statute. Id. at 593-94. See also City of Winter Springs v. Winter Springs Prof'l, 885 So.2d 494 (Fla. 1st DCA 2004).
Article 8 of the parties' CBA expressly requires layoffs to be implemented pursuant to the provisions of Chapter 60K-17. Chapter 60K-17, containing the disputed layoff rule, was repealed by section 42, Chapter 2001-43, Laws of Florida, effective January 1, 2002. The state argues that the effect of the amendment to section 110.227(2) was to immediately repeal the bumping rule, effective May 14, 2001. We disagree with that reading of section 110.227(2). Instead, as PERC recognized in its own order, section 110.227(2) "prohibited replacing the layoff rule with one that included bumping rights for Career Service employees ..." Section 110.227(2) contemplated that the state's bumping rule would be replaced by a new rule that considered comparative merit, demonstrated skills, and the employee's experience.
When sections 21 and 42 of Chapter 2001-43 are read in pari materia, as they must be,[2] it is clear that the legislature intended Chapter 60K-17 to remain in effect until January 1, 2002, afterwhich the legislature intended that personnel rules would be adopted which precluded a "bumping" system. See the newly enacted Rule 60L-33.004, effective January 1, 2002. Thus, we agree with the union that, in alleging that the state failed to follow Chapter 60K-17 in laying off the DOT toll collection employees while the former layoff rule was still in effect, its ULP has stated a prima facie violation of section 447.501.
REVERSED and REMANDED for proceedings consistent with this opinion.
ALLEN and POLSTON, JJ., concur.
NOTES
[1] Although the parties' ratified contract expired on June 30, the union states without opposition that the parties remained in a "status quo" relationship. "Status quo" refers to the period that occurs between collective bargaining agreements. "[I]f the agreement expires and another has not been executed, the terms of the first contract survive the contract's expiration. Until a new agreement is negotiated, an employer is prohibited from unilaterally altering certain material terms in the expired contract." City of Delray Beach v. Prof'l Firefighters of Delray Beach, Local 1842, Int'l Ass'n of Firefighters, 636 So.2d 157, 159 n. 3 (Fla. 4th DCA 1994).
[2] See Lincoln v. Florida Parole Comm'n, 643 So.2d 668, 671 (Fla. 1st DCA 1994)("Statutes on the same subject and having the same general purpose should be construed in pari materia and the courts have a duty to harmonize related statutes passed during the same legislative session, giving meaning and effect to each, if possible.")