COPE, J.
(dissenting).
This is an appeal of an order denying a Home Health Agency Application for Change of Ownership. The question is whether the appellee Agency for Health Care Administration (“AHCA”) correctly interpreted the standard form application and the regulatory statute. As the Agency’s interpretation is contrary to the plain language of the questionnaire and the statute, we should reverse the order now before us.
In 2006, the appellant Trust Care Health Services, Inc. was granted a license to operate a home health agency in Virginia Gardens, Florida.[6] In 2007, the then owner sold all of the stock of Trust Care to Roberto F. Marrero. This transaction transferred control of the corporation to Mr. Marrero.
Trust Care filed its Home Health Agency Application for Change of Ownership. AHCA issued a notice of intent to deny the application for change of ownership, maintaining that the application omitted a required disclosure on questions (9)(c) and (d). Trust Care replied that the question on the application, which derives from the applicable statute, was being incorrectly interpreted by AHCA. After an informal hearing before AHCA’s in-house hearing officer, AHCA denied the application and Trust Care has appealed.
The questions at issue here are questions (9)(c) and (d). In order to put these questions in context, we must first consider the preliminary parts of the Application form.
As relevant here, the Application asks for:
(1) HOME HEALTH AGENCY’S NEW INFORMATION
This question asks for name, address, and telephone number of the home health agency, along with the applicable licenses it holds.
(3) NEW OWNERSHIP (individual or entity that will directly own the home health agency)
This question asks for name and address of the new owner, along with employer identification number and how the new owner is organized, e.g., corporation, partnership, individual, etc.
*19 (4) HOME HEALTH AGENCY’S CURRENT INFORMATION [if different from information in item (1) above]
(5) CURRENT OWNERSHIP (individual or entity that directly owns the home health agency)
(6) IDENTIFY THE PRINCIPALS OF THE NEW OWNERSHIP
This question asks for name and address of President, Vice President, and other officers or partners.
(7) FOR-PROFIT ENTITIES
List individuals and/or legal entities who have at least 5% financial interest in the entity listed in item (2) above.
We now come to the two questions at issue here. Those questions are:
(9) FOR ALL OWNERSHIPS
[[Image here]]
(c) Has the applicant, owner or any individual having 5% or more financial interest been excluded, suspended, terminated or involuntarily withdrawn from participation in Medicare, Medicaid in any state or any other governmental or private health care/insurance program? YESDNOD
If yes, enclose the following information: the full name of the person, the position held and a description/explanation of any exclusions, permanent suspensions, terminations or involuntary withdrawals from any of the above listed programs. Proof of compliance with the requirements for disclosure of ownership and control interest under the Medicare or Medicaid programs may be accepted in lieu of this submission.
(d) Has the applicant, owner or any individual having 5% or more financial interest previously been found by any licensing, certifying or professional standards board to have violated the standards or conditions that relate to home health-related licensure or certification, or to the quality of home health-related services provided? YESG nod
If yes, enclose the following information: the full name of the person, the position held and a written description/explanation of any violations and the actions taken by the relevant board.
(Emphasis in original).
Question (9)(c) asks whether the applicant (Trust Care) or the owner (Mr. Mar-rero) has been excluded, suspended, terminated, or involuntarily withdrawn from participation in Medicare, Medicaid, or any other governmental or private health care/insurance program. Trust Care and Mr. Marrero answered the question “No.”
Question (9)(d), asks whether Trust Care or Mr. Marrero has previously been found by any licensing, certifying, or professional standards board to have violated the standards or conditions that relate to licensure, certification, or quality of care. Again, the answer was “No.”
AHCA ruled that the answers to questions (9)(c) and (d) were untruthful with respect to Mr. Marrero. The agency reached that conclusion on the following analysis. Mr. Marrero was previously employed by a company called All Med Network Corp. where he was a Vice President, but was not a shareholder. In May 2006, All Med was terminated by the Medicare program and AHCA thereafter revoked its license. These administrative actions were taken against All Med but no action was taken against Mr. Marrero personally.
AHCA maintains that on question 9(c), Mr. Marrero should have answered yes, he had been terminated by the Medicare program — even though that is not true. In an analysis worthy of Kafka, AHCA says that since Mr. Marrero was an officer of All Med, he is considered to be a “controlling interest” of All Med. See § 408.803(7)(b), *20 Fla. Stat. (2007). AHCA then says that since he was a “controlling interest” of All Med, this means that when Medicare terminated All Med from the Medicare program, the Medicare termination was also directed at Mr. Marrero individually. But it wasn’t.
In interpreting the standard form as well as the statute, the agency must follow “fundamental principles of grammar.” Stuart Yacht Club & Marina, Inc. v. State Dep’t of Nat’l Res., 625 So.2d 1263, 1268 (Fla. 4th DCA 1993). In plain English, question (9)(c) asks whether the owner of Trust Care — Mr. Marrero — has “been ... terminated ... from participation in Medicare ... or any other governmental ... health care/insurance program?” The answer to that question is clearly no. The actions taken by Medicare and AHCA were directed at All Med, not Mr. Marrero individually. The same analysis applies to question (9)(d).
With regard to statutory analysis, the Florida Supreme Court has “repeatedly explained that when the language of a statute is unambiguous and conveys a clear and ordinary meaning, there is no need to resort to other rules of statutory construction; the plain language of the statute must be given effect.” Starr Tyme, Inc. v. Cohen, 659 So.2d 1064 (Fla.1995); see Verizon Fla., Inc. v. Jacobs, 810 So.2d 906, 908 (Fla.2002). A court owes no deference to an agency interpretation which is contrary to the terms of the applicable statute. Fla. Hosp. v. Agency for Health Care Admin., 823 So.2d 844, 848 (Fla. 1st DCA 2002); see Miami-Dade County v. Gov’t Supervisors Ass’n of Fla., 907 So.2d 591, 594 (Fla. 3d DCA 2005) (same); Darbie v. State, 711 So.2d 1280, 1283 (Fla. 3d DCA 1998) (same).
For its statutory analysis, the majority opinion erroneously relies on the affidavit of Elizabeth Dudek, Deputy Secretary of AHCA. This affidavit was evidently offered in an effort to put forward AHCA’s administrative interpretation of paragraph 408.815(l)(e), Florida Statutes (2007).
The problem is that AHCA’s interpretation runs squarely contrary to the language of the statute. According to the affidavit, the Deputy Secretary says the statutory intent was “to insure that individuals that have been controlling interests in licensed entities that were terminated from the Medicaid or Medicare programs do not receive a license from AHCA to operate a new entity.” R. 201. According to the affidavit, if a home health agency was terminated by Medicaid or Medicare, AHCA can deny a license to anyone who was an officer or owner of that home health agency, even if no regulatory action was taken against the officer or owner.[7]
But that is not what the statute says. The statute says AHCA may deny a license or change of ownership application if (among other things) “[t]he applicant ... or controlling interest has been ... excluded from participation in the state Medicaid program ... or the Medicare program.” § 408.815(l)(e), Fla. Stat. (2007). In plain English, the inquiry is whether the applicant — Trust Care — or the controlling interest of Trust Care — Mr. Marre-ro — has been excluded from participation in Medicaid or Medicare. It is undisputed that no such action was taken against Mr. Marrero or Trust Care.[8]
*21 AHCA also suggests that if its interpretation is overturned, then it will be powerless to regulate home health agencies. That argument is a red herring. The question before us is whether the agency has correctly interpreted the application form, and the statute related thereto. This appeal must stand or fall on those issues. With regard to regulatory power, the Legislature has promulgated lengthy licensing standards in sections 400.471 and 400.474, Florida Statutes (2007). AHCA admits that Medicare and Medicaid have regulatory authority with respect to corporate officers, directors, and owners. 42 U.S.C. § 1320e-7a. If AHCA believes it should have more or different authority, then that issue should be addressed to the Legislature. The question before us is whether AHCA has properly interpreted the application form and statute actually in existence.
Reversal is in order in this case.

. Home health agencies are regulated by part III of chapter 400, Florida Statutes (2007). Health care licensing is regulated by part II of chapter 408, Florida Statutes (2007).

. AHCA acknowledges that even under its interpretation of the statute, denial of a change of ownership application is discretionary, not automatic. Id.; Answer Brief at 17.

. To the extent that the affidavit attempts to set forth legislative history, that is not appropriate. The words used in the statute are clear, so resorting to legislative history is not relevant. Starr Tyme, 659 So.2d at 1067. *21 Even if the statute were ambiguous (which it is not), the affidavit is not competent evidence of legislative history, because legislative history must be found in the Legislature's own documents, not an affidavit of an officer of an executive branch agency.