WETHERELL, J.
The Dade County Police Benevolent Association (Union) appeals a final order of the Public Employees Relations Commission (PERC) concluding that Miami-Dade County did not commit an unfair labor practice when its Mayor vetoed the County Commission’s resolution of an impasse under section 447.403, Florida Statutes (2011). The Union argues, and we agree, that section 447.403 does not permit a local executive branch official to veto the legislative body’s resolution of an. impasse. Accordingly, we reverse the final order and remand for further proceedings.

Factual and Procedural Background

In June 2011, the Union and the Mayor began negotiations for successor collective bargaining agreements (CBAs) for the rank-and-file and supervisory police officers employed by the County. By November 2011, the parties reached agreement on all issues except one: whether the bargaining unit employees would be required to contribute an additional percentage of their base wages towards the cost of health insurance. The parties reached an impasse on this issue because the Mayor wanted an additional 5% contribution and the Union opposed any additional contribution. The parties agreed to submit the impasse directly to the County Commission for “final resolution,” waiving their right to a special magistrate proceeding.
On January 5, 2012, the County Commission conducted a public hearing on the impasse and adopted Resolution No. R-02-12, which “ratifie[d] and settle[d] the collective bargaining impasse by determining that there shall be no additional contribution to the County’s cost of health care.” The Resolution directed the Mayor and the Union to reduce this now-resolved impasse *484 issue to writing along with the other previously agreed-upon issues so the CBAs could be submitted to the Union for ratification. The Resolution also stated that it would “become effective ten (10) days after the date of its adoption unless vetoed by the Mayor, and if vetoed, shall become effective only upon an override by [the County Commission].”
On January 11, 2012, the Mayor vetoed the Resolution pursuant to the authority provided to him by the Home Rule Amendment and Charter for Miami-Dade County (Charter). The Charter states that the Mayor “shall have veto authority over any legislative [or] quasi-judicial ... decision of the Commission,” and it authorizes the County Commission to override the Mayor’s veto at its next regular meeting by a 2/3 vote. See Charter, § 2.02.E.
The County Commission did not override the Mayor’s veto at its next regular meeting on January 24, 2012. Instead, at that meeting, the Commission voted to reconsider the Resolution adopted on January 5. The motion to reconsider was made by a member of the Commission pursuant the Commission’s rules of procedure, which provide that “[a]n action of the commission may be reconsidered only at the same meeting at which the action was taken or at the next regular meeting thereafter.” Commission Rules of Procedure, § 7.01 (k). The effect of the Commission’s approval of the motion to reconsider was to “rescind” the January 5 Resolution. Id. (“Adoption of a motion to reconsider shall rescind the action reconsidered.”). After adopting the motion to reconsider the Resolution, the Commission voted to resolve the impasse issue by imposing an additional 4% employee contribution towards the cost of health insurance.
In March 2012, the Union filed an unfair labor practice charge against the County with PERC. The charge alleged, among other claims,[1] that the Mayor’s veto of the January 5 Resolution was an unfair labor practice because section 447.403 requires the “legislative body” to resolve the impasse and the Mayor is not a member of the County’s legislative body. The County responded that the Mayor’s veto authority flows from the Charter and that section 447.403 does not dictate the procedure for resolving an impasse or preclude local procedures that provide for a mayoral veto.
The charge was found legally sufficient and was referred to-a PERC hearing officer for an evidentiary hearing. After the hearing, the hearing officer entered a recommended order concluding that the County did not commit an unfair labor practice when the Mayor vetoed the January 5 Resolution or when the Commission imposed the additional 4% contribution upon reconsideration. In support of this conclusion, the hearing officer relied on a 1997 decision in which PERC’s general counsel rejected the Union’s claim that a mayoral veto of the legislative body’s resolution of an impasse is an unfair labor practice. That decision reasoned:
The [Union] argues that [section 447.403(4)(d) ] precludes the Mayor from vetoing the City Council’s resolution of the impasse issues. I disagree. While I recognize that the Section 447.403 impasse resolution procedure refers to action by the legislative body, I cannot conclude that the Mayor’s veto of the legislative body’s action, lawfully taken pursuant to the authority granted to him by the City Charter, contravenes Chapter 447, Part II. The effect of the Mayor’s lawful action can reasonably be viewed as the legislative body not yet having acted on the special master’s rec *485 ommendations [to resolve the impasse]. I conclude that the Mayor’s veto of the City Council’s action is not an unfair labor practice....
Dade Cnty. Police Benevolent Ass’n v. City of Hialeah, 24 F.P.E.R. ¶ 29000 (1997).
The Union filed an exception to the hearing officer’s conclusion that the County did not commit an unfair labor practice in connection with the Mayor’s veto or the Commission’s reconsideration of the January 5 Resolution. PERC denied the exception in its final order based on the reasoning in the City of Hialeah decision and concluded that “[t]he January 5 vote by the [County Commission] did not resolve the impasse and should not be viewed as the legislative body’s resolution.” Commissioner Delgado dissented from this portion of the final order because, in his view, “[t]here is nothing in the impasse resolution procedure that allows a chief executive officer to reject the resolution of impasse issues by the legislative body” and “to allow such a rejection fundamentally changes the balance of power and is corrosive to the right to bargain collectively guaranteed by Article I, Section 6, of the Florida Constitution.”
The Union appealed the final order to this court. The County filed a cross-appeal, but did not pursue it.

Analysis

The Union contends that PERC erred in construing section 447.403 to allow the Mayor to veto the County Commission’s resolution of the impasse because the impasse resolution process is governed by state law, not the County’s Charter, and section 447.403 gives the Commission the exclusive authority to resolve the impasse. The County responds that section 447.403 does not supersede the provisions of its Charter authorizing the Mayor to veto actions of the Commission and, in any event, the veto is “moot” because the Commission itself resolved the impasse on January 24 after it reconsidered the January 5 Resolution in accordance with its procedural rules. The Union replies that the Commission did not have the authority to reconsider the January 5 Resolution because PERC precedent precludes a legislative body from resolving the same impasse more than once.
Because the issue framed by this appeal boils down to whether PERC correctly interpreted section 447.403, our standard of review is de novo. See Headley v. City of Miami, 118 So.3d 885, 890 (Fla. 1st DCA 2013) (explaining that “questions of statutory interpretation and other legal conclusions are reviewed de novo”). We generally defer to PERC’s interpretation of the provisions of chapter 447 because of its special expertise in public sector labor law matters, but we do not have to accord deference to PERC’s interpretation of the law if it is clearly erroneous or conflicts with the plain and ordinary meaning of the statute. Id.; see also Manatee Educ. Ass’n v. Sch. Bd. of Manatee Cnty., 62 So.3d 1176, 1181 (Fla. 1st DCA 2011) (quoting Fla. Pub. Emps. Council 79, AFSCME, AFL-CIO v. State, 921 So.2d 676, 681 (Fla. 1st DCA 2006)).
Section 447.403 prescribes the procedure for resolving an impasse in negotiations over the terms and conditions to be included in a CBA. The procedures include an opportunity for mecjiation and a hearing before a special magistrate, see § 447.403(l)-(3), Fla. Stat., but the parties can waive these procedures (as they did here) and proceed directly to a resolution of the impasse by the legislative body under subsection (4) of the statute. Subsection (4) provides in pertinent part:
(a) The chief executive officer of the governmental entity involved shall ... *486 submit to the legislative body of the governmental entity involved ... the chief executive officer’s recommendations for settling the disputed impasse issues ...;
(b) The employee organization shall submit its recommendations for settling the disputed impasse issues to such legislative body ...;
(c) The legislative body ... ■ shall forthwith conduct a public hearing at which the parties shall be required to explain their positions ...;
(d) Thereafter, the legislative body shall take such action as it deems to be in the public interest, including the interest of the public employees involved, to resolve all disputed impasse issues; and
(e) Following the resolution of the disputed impasse issues by the legisla-' five body, the parties shall reduce to writing an agreement which includes those issues agreed to by the parties and those disputed impasse issues resolved by the legislative body’s action taken pursuant to paragraph (d).' The agreement shall be signed by the chief executive' officer and the bargaining agent and shall be submitted to the public employer and to the public employees who are members of the bargaining unit for ratification. If such agreement is not ratified by all parties, pursuant to the provisions of s. 447.309, the legislative body’s action taken pursuant to the provisions of paragraph (d) shall take effect as of the date of such legislative body’s action for the remainder of the first fiscal year which was the subject of negotiations....
§ 447.408(4), Fla. Stat.
The language in paragraph (4)(d) clearly and unambiguously contemplates that the impasse will be resolved exclusively by the legislative body, and as observed by PERC Commissioner Delgado in his dissent below, “[t]here is nothing in the impasse resolution proceeding that allows a chief executive officer to reject the resolution of the impasse issues by the legislative body.” Indeed, it is clear from subsection (4) as a whole that the chief executive officer’s role in the impasse process is limited to that of an advocate for the governmental entity’s position on the impasse issue. Accordingly, where, as here, the chief executive officer is not a member of the legislative body, it would be inconsistent with the statute and general principles of due process to allow the executive to participate in the legislative body’s decision-making process beyond his or her role as an advocate.
We recognize that section 447.403(4)(d) does not dictate the procedure by which the legislative body is to “take ... action ... to resolve the disputed impasse issues,” but we find no support in the statute for the proposition stated in the City of Hialeah decision and adopted in the final order in this case that a mayoral veto can be viewed as the legislative body having not yet acted to resolve the impasse. This interpretation makes no sense and is clearly erroneous because the vetoed action was action taken by the legislative body to resolve the impasse and it would have been the legislative body’s final action on the matter were it not for the veto. Moreover, PERC’s interpretation conflicts with section 447.403(4)(e), which provides that after the legislative body resolves the disputed impasse issue, the chief executive officer has no role except to reduce the legislative body’s resolution of the issue to writing along with the issues agreed to by the parties and then sign the agreement.
We have not overlooked the fact that the Mayor’s veto authority in this case was derived from the Charter, which was adopted pursuant to the authority granted *487 by the Florida Constitution. However, the constitutional provision pursuant to which the Charter was adopted makes clear that general law supersedes any conflicting provision of the Charter. See art. VIII, § 11(6), Fla. Const. (1885) (“Nothing in this section shall be construed to limit pr restrict the power of the Legislature to enact general laws which shall relate to Dade County ... relating to county or municipal affairs and all such general laws shall apply to Dade County ... to the same extent as if this section had not been adopted and such general laws shall supersede any part or portion of the home rule charter provided for herein in conflict therewith .... ”), reaffirmed by art. VIII, § 6(e), Fla. Const. (1968); see also art. VIII, § 1(g), Fla. Const. (1968) (“Counties operating under county charters shall have all powers of local self-government not inconsistent with general law....”). Here, based on our conclusion that section 447.403 does not permit the chief executive officer to have any role in the legislative body’s resolution of the impasse beyond his or her role as an advocate, it follows that the Charter is in conflict with, and superseded by, the statute insofar as the Charter purports to give the Mayor the authority to veto the action taken by the Commission to resolve disputed impasse issues.
Finally, we have not overlooked the County’s argument that the Mayor’s veto was rendered “moot” by the County Commission’s resolution of the impasse on January 24 after the Commission’s reconsideration of the January 5 Resolution in accordance with its procedural rules. We reject this argument, although not for the reasons urged by the Union.
The Union argues that the County Commission did not have the authority to reconsider the January 5 Resolution because, under PERC precedent, a legislative body cannot resolve the same impasse more than once [2] and it must seek to avoid any appearance of impropriety in its actions.[3] We do not read PERC precedent — or, more importantly, section 447.403 — to categorically prohibit a legislative body from reconsidering its resolution of a disputed impasse issue on its own initiative pursuant to its rules of procedure, and we see no inconsistency between section 447.403 and the County Commission’s procedural rules authorizing reconsideration of prior actions at the next regular Commission meeting. Indeed, “[a] basic rule of parliamentary law is that unless some right of a third person intervenes, all deliberative bodies have a right to reconsider their proceedings during their session, as often as they think is proper, when not otherwise provided by law, and it is the final result only which is to be regarded as the thing done.” Bd. of County Comm’rs of Sarasota Cnty. v. Webber, 658 So.2d 1069, 1071-72 (Fla. 2d DCA 1995) (internal quotations omitted); see also Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963, 968 (1912) (“A right to recon *488 sider action taken is an attribute of all deliberative bodies.... ”); Smull v. Town of Jupiter, 854 So.2d 780, 782-83 (Fla. 4th DCA 2003) (affirming trial court’s ruling that town council “had the inherent power to reconsider its previous vote” in a case where the reconsideration occurred nearly one month after the prior vote). Accordingly, it follows that until the vote taken by legislative body to resolve the impasse is not subject to reconsideration under the legislative body’s procedural rules, the legislative body has not yet “take[n] ... action” to resolve the impasse as required by section 447.403(4)(d).
Here, however, the County Commission did not reconsider the January 5 Resolution until after the Mayor vetoed the Resolution and there is no indication in the record that the Commission would have reconsidered the Resolution on its own had it not been vetoed by the Mayor. Indeed, the record strongly suggests that the only reason that the Commission voted to reconsider the Resolution is because of the Mayor’s veto. Accordingly, under these circumstances, the Commission’s subsequent action did not somehow cure or “moot” the unlawful labor practice that occurred when the Mayor vetoed the Resolution.

Conclusion

For the foregoing reasons, we reverse the determination in the final order that the County did not commit an unfair labor practice when the Mayor vetoed the January 5 Resolution. We remand for PERC to determine the appropriate remedy for this unfair labor practice.
REVERSED and REMANDED for further proceedings.
BENTON and SWANSON, JJ., Concur.

. The other claims are not at issue in this appeal.

. See, e.g., Port Orange Professional Firefighters Ass'n v. City of Port Orange, 37 F.P.E.R. ¶ 99 (2011) (concluding that the city committed an unfair labor practice when, at request of the city manager, the city commission held a second impasse resolution hearing five months after the first hearing on an issue that was then the subject of an unfair labor practice claim at PERC).

. See, e.g., Boca Raton Firefighters, Local 1560, Inc., IAFF v. City of Boca Raton, 4 F.P.E.R. ¶ 4040 (1978) (explaining that the actions of the legislative body will be "closely scrutinize[d] ... to insure good faith observance of the duty of fairness” and stating that the "public employer/legislative body must seek to avoid any appearance of impropriety which indicates that the parties are not receiving equal treatment") (emphasis in original).