IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

INTERNATIONAL
ASSOCIATION OF
FIREFIGHTERS LOCAL S-20,
FLORIDA STATE FIRE
SERVICE ASSOCIATION,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-0618

      Appellant,

v.

STATE OF FLORIDA,

      Appellee.

_____/

Opinion filed June 6, 2017.

An appeal from the Public Employees Relations Commission.

Tobe Lev and Richard Siwica of Egan, Lev & Siwica, P.A., Orlando, for Appellant.

Richard A. Sicking and Mark A. Touby of Touby, Chait & Sicking, P.L., Coral Gables, for Florida Professional Firefighters, Inc., International Association of Firefighters, AFL-CIO, Amicus Curiae in support of Appellant.

Michael Mattimore, Jason Miller, and Avery McKnight of Allen, Norton & Blue, P.A., Tallahassee, for Appellee.


OSTERHAUS, J.

      The International Association of Firefighters Local S-20 appeals a decision of

the Public Employees Relations Commission dismissing an unfair labor charge

against the Governor for vetoing a proviso in the General Appropriations Act (GAA). Had the proviso been approved, it would have given a raise to firefighters who work for the State. We affirm because the Governor has constitutional authority to veto specific appropriations of the GAA, and because the Legislature ultimately resolved the impasse by maintaining the status quo.

I.

Article I, § 6 of the Florida Constitution, along with its enabling statute, chapter 447, Florida Statutes, recognizes state employees' right to collectively bargain. State v. Fla. Police Benevolent Ass'n, 613 So. 2d 415, 418 (Fla. 1992). In the case of state employees, the Governor is considered the public employer in collective bargaining negotiations. § 447.203(2), Fla. Stat. As part of the statute, § 447.403 sets forth the process by which state employees and the Governor must resolve impasses. The Legislature is responsible for resolving impasse issues. § 447.403(2)(b), Fla. Stat. When parties reach an impasse, the Legislature must convene a committee to review impasse issues and recommend a resolution to the Legislature. § 447.403(5)(a), Fla. Stat. Once the Legislature takes action on the resolution, the parties are bound. § 447.403(5)(b), Fla. Stat.

Appellant Local S-20 is the duly authorized bargaining agent for a unit of firefighters employed by the State of Florida. Local S-20 and the Governor bargained over wages, hours, and conditions of employment for fiscal year 2015-

2

2016, and reached an impasse on several issues. Most notably, Appellant sought a $1500 per member raise. Upon reaching impasse, the parties submitted their positions to the Joint Select Committee on Collective Bargaining as required by the statute for resolving impasses. After the Committee completed its work, the Legislature passed the GAA, which included proviso language resolving the impasse by granting a $2000 per member pay raise, an even larger raise than Appellant had sought. The Legislature also passed a catch-all impasse provision in chapter 2015-223, Laws of Florida, providing for the resolution of unaddressed impasses "by maintaining the status quo under the applicable current bargaining agreement." When the GAA was presented to the Governor, he vetoed the $2000 raise-specific proviso. After the Legislature took no subsequent action to override the veto, the impasse was resolved by maintaining the status quo.

When the State presented the bargaining agreement without including the raise, Appellant filed an unfair labor practice charge claiming that the Governor lacked veto authority. But the Public Employees Relations Commission dismissed the charge. It rejected Appellant's claim that the Governor was powerless to veto the raise and approved the State's presentation of a bargaining agreement that maintained wages at the status quo.

## II.

This case involves the Governor's authority to review and veto public employee, collective bargaining-related matters in the GAA. The Legislature tried to resolve a wage-related impasse in this case by including a $2000 raise in a specific appropriation within the GAA. Because the GAA is not self-executing, however, the act went to the Governor for approval.

The Florida Constitution is clear that the Governor may sign the GAA, veto it, or veto specific appropriations within the act. Article III, § 8, Fla. Const. ("The governor may veto any specific appropriation in a general appropriation bill . . . ."). In this case, if the Governor approved the $2000 raise within the GAA, then the impasse would be resolved. However, if the Governor vetoed either the entire GAA, or the raise-specific proviso within the GAA, then the impasse would remain within the Legislature's purview to resolve by some other means.

The Governor vetoed the specific appropriation here and Appellant takes issue with it. Appellant does not dispute the Legislature's attempt to resolve impasses via the GAA in the first instance, but argues that the Governor was required to approve the raise-specific appropriation in the GAA. See § 447.403(5)(b), Fla. Stat. ("Any actions taken by the Legislature shall bind the parties . . . ."). Based primarily on a statute, Appellant asks us to recognize a limitation on the Governor's constitutional authority to review the GAA, even though the Constitution explicitly allows the

4

Governor to veto the GAA or "any specific appropriation in a general appropriation bill." Article III, § 8, Fla. Const. (emphasis added). We cannot accept Appellant's invitation. The Florida Constitution clearly articulates the Governor's authority to veto the GAA, or specific appropriations therein. Id. It authorized him to veto the raise appropriation here. See Brown v. Firestone, 382 So. 2d 654 (Fla. 1980) (setting forth parameters regarding the exercise of the Governor's veto power). That Appellant's members possess constitutional collective bargaining rights does not alter the Governor's constitutional authority with respect to the GAA. See Fla. Police Benevolent Ass'n, 613 So. 2d at 418-19 (refusing to elevate the collective bargaining rights of public employees and thus alter "years of strict adherence to the separation of powers doctrine"). The Governor's action in this case comported with his constitutional authority.

Moreover, the Governor's veto did not displace the Legislature's power to resolve the impasse in this case. After the veto, the Legislature retained final authority under § 447.403(5)(b) to resolve the wage impasse, and it did so here. The Legislature knew two things before attempting to resolve the impasse through the GAA: (1) that the Governor could veto specific appropriations, and (2) that it could override any veto. After the Governor exercised his veto authority in this case, nothing stopped the Legislature from exercising its constitutional authority to override his veto. See Article III, § 8(c), Fla. Const. A legislative override would

have granted state firefighters the $2000 per employee raise they sought. But instead, the Legislature accepted the status quo. In fact, the Legislature enacted a separate act providing a catch-all impasse resolution provision that became law. Chapter 2015-223, § 1, Laws of Florida, provided for unaddressed impasses to be resolved "by otherwise maintaining the status quo under the language of the applicable current bargaining agreement." The Legislature effectively resolved the impasse by choosing not to override the Governor's veto and maintaining the status quo.

Appellant argues that we should follow <u>Dade County Police Benevolent Association v. Miami-Dade County Board of County Commissioners</u>, 160 So. 3d 482, 483 (Fla. 1st DCA 2015), in which we held that a local executive branch official could not veto the legislative body's resolution of an impasse. But that case presented a different scenario that didn't involve restricting the Governor's constitutional authority to veto appropriations. The mayor in that case did not have constitutional authority to veto the impasse resolution and that veto violated Florida's collective bargaining statute. Here, by contrast, the Governor possessed explicit constitutional authority to veto appropriations within the GAA. <u>See</u> Art. III, § 8(a), Fla. Const. And so, while it is true that public employees possess important, constitutionally protected collective bargaining rights, the Legislature cannot force the Governor's hand to approve and sign the GAA, or specific appropriations therein. <u>Fla. Police Benevolent Ass'n</u>, 613 So. 2d at 418-19 (warning of separation

6

of powers encroachments). The Legislature here retained and exercised its ultimate authority to resolve the impasse after the Governor's veto, but chose not to override the veto and to maintain the status quo.

## III.

The decision of the Public Employees Relations Commission is AFFIRMED.

JAY, J., CONCURS; B.L. THOMAS, J., DISSENTS WITH OPINION.

B.L. THOMAS, J., DISSENTING.

I respectfully dissent. As both parties agree, this case presents this court with a conflict between two state constitutional provisions: The Governor's veto authority under Article III, section 8 of the Florida Constitution, and the constitutional right of public employees to collectively bargain under Article I, section 6 of the Florida Constitution, as interpreted in Dade County Classroom Teachers Association v. The Legislature of the State of Florida, 269 So. 2d 684 (Fla. 1972), and implemented in Chapter 447, Florida Statutes. The State asserts that the Governor's veto power is legally superior to the constitutional right of public employees to collectively bargain, by arguing that the Governor may veto the pay increase granted by the Florida Legislature to resolve a collective bargaining impasse, and absent legislative override, such a veto is the final word. Conversely, the public employees argue that their constitutional right to collectively bargain must, in this limited instance, trump the Governor's veto authority, absent the Governor demonstrating a compelling public interest to justify the veto of the Legislature's resolution of the impasse in the employees' favor. See Chiles v. United Faculty of Fla., 615 So. 2d 671, 673 (Fla. 1993) ("[W]e agree with the trial court that the legislature has authority to reduce previously approved appropriations . . . made pursuant to a collective bargaining agreement, but only where it can demonstrate a compelling state interest."). Otherwise, the public employees argue, their right to

8

collective bargaining is eviscerated.  Here, the public employees' argument should prevail, which would not otherwise significantly impair the Governor's general veto authority and properly harmonizes conflicting provisions of organic law.  <u>State v. Div. of Bond Fin. of Dep't of Gen. Servs.</u>, 278 So. 2d 614, 617 (Fla. 1973) ("It is a fundamental rule of construction that, if possible, amendments to the Constitution should be construed so as to harmonize with other constitutional provisions, but if this cannot be done, the amendment being the last expression of the will of the people will prevail.").

The State asserts that public employees, who accomplished a herculean task by convincing a majority of both houses of the Legislature to grant a positive ruling on an impasse, must then return to the Legislature and convince **two-thirds** of the membership to override the veto, in order to preserve the Legislature's resolution of the impasse.  To impose such a requirement on public employees in essence holds that public employees have no effective constitutional right to collective bargaining, as they must in fact accomplish not simply a herculean task, but instead achieve a near-impossible feat of persuading the Legislature to exercise its override authority, an extremely rare occurrence, precisely because of the grave political ramifications an override necessarily causes between the Executive and Legislative branches.[1]

---

[1] In 2010, the Legislature overrode eight vetoes of Governor Crist, but those vetoes were the "first overrides in 12 years."  Bill  Kaczor, *Florida lawmakers override 8 Crist vetoes*, Deseret News (Nov. 16, 2010, 12:00AM),

To avoid a result that renders hollow the constitutional right of collective bargaining, the Public Employees Relation Act should be interpreted to require that the Governor demonstrate a compelling public interest, such as a budgetary emergency, to sustain a gubernatorial veto of a legislative resolution of impasse. While public employees have no right to receive a favorable resolution from the Legislature on collective bargaining, once the Legislature has ruled in the public employees' favor and against the Governor, it cannot be reconciled with Article I, section 6 of the Florida Constitution to allow the Governor to render the Legislature's decision a nullity through the veto authority.

Here, collective bargaining reached an impasse between the Governor and Appellants regarding disputed wages for fiscal year 2015-2016. To resolve the impasse, under section 447.203 and 447.403, Florida Statutes, the Legislature appropriated a $2000 individual salary increase for the firefighters' bargaining unit, or a specific appropriation of $1.57 million. Following this resolution, the Governor vetoed the salary increase, stating that "this issue should be addressed at a statewide level for all employees." See Budget Transmittal Letter from Rick Scott, Governor of Fla., to Ken Detzner, Sec'y of State (June 23, 2015) (vetoing section 8(a) specifying pay issues, Ch. 2015-232, Laws of Fla. pg. 404).

---

http://www.deseretnews.com/article/700082591/Florida-lawmakers-override-8-Crist-vetoes.html?pg=all.

10

In United Faculty of Florida, the supreme court held that once the Legislature resolved an impasse with state employees by enacting a 3% pay increase, [2] even the Legislature, absent a compelling state interest, was powerless to retract the increase, notwithstanding a severe budget shortfall. 615 So. 2d at 672-73. The court noted that once the Legislature resolves an impasse and funds an agreement with public employees, a valid contract exists with the public employees that cannot be abrogated. Id. at 673. In addition, however, the supreme court relied on the public employees' constitutional right to collectively bargain under Article I, section 6 of the Florida Constitution. Id. at 672. Furthermore, the court distinguished its holding in State v. Florida Police Benevolent Association, 613 So. 2d 415 (Fla. 1992), because in that case, "no final agreement had been reached between the parties . . . and funded . . . by the legislature." Id. at 672.

This case is and should be controlled by the logic and precedent of United Faculty of Florida, as in both cases the **Legislature funded the impasse resolution.** Acting as the third-party decision maker to resolve an impasse, the Legislature's decision should be the final result, absent a compelling state interest that cannot be

_____

[2] Important here in context, when public employees do not receive a salary increase, their salary is actually **reduced** proportionate to the inflation rate. When this increase was vetoed, a pay **increase** granted by the Legislature to resolve an impasse of collective bargaining became a pay **reduction**. A public employee earning $40,000 in 2011 must earn $42,460 in 2016 to keep pace with inflation. Inflation Calculator, http://www.in2013dollars.com/2011-dollars-in-016?amount=40 (last visited Mar. 24, 2017).

11

rectified by reasonable alternative means. In United Faculty of Florida, the court quoted its earlier decision in Florida Police Benevolent Association:

> [w]here the legislature provides enough money to implement the benefit as negotiated, but attempts to unilaterally change the benefit, the changes will not be upheld, **and the negotiated benefit will be enforced**.

Id. at 673 (emphasis added) (quoting Fla. Police Benevolent Ass'n). The court has thus declared that the Legislature will not be permitted to "unilaterally" abrogate the constitutionally-grounded collective bargaining rights of public employees.

The question at issue here is whether the Governor, by using his veto power, may unilaterally vacate the Legislature's decision to resolve a collective-bargaining impasse. Based on logic, precedent, and the constitutional basis of public employees' collective bargaining rights, the correct answer is no.

In Florida Police Benevolent Association, the supreme court held that the Legislature could not be compelled to appropriate funds to implement a negotiated agreement between the Governor, the employer, and the public employees, stating, "The fact that public employee bargaining is protected under Florida's Constitution does not require us to ignore universally recognized distinctions between public and private employees." 613 So. 2d at 418. The court held that the separation of powers doctrine in Article II, section 3 and the provision of Article VII, section 1(c) of the state constitution requires that "exclusive control over public funds rests solely with the legislature." Id. But this decision also recognized that if the Legislature

12

appropriated an adequate amount to fund a negotiated resolution of an impasse, the **Legislature could not change the agreement,** absent a compelling public interest. Id. at 421. The Legislature should be recognized as the final decision maker in the resolution of an impasse between the Governor and public employees here.

I would hold that when the Legislature appropriates the necessary funds to resolve an impasse of collective bargaining between the Governor and public employees, this appropriation cannot be vetoed, absent a compelling public interest, in order to preserve any meaningful constitutional right of public employees to collectively bargain under Article I, section 6 of the Florida Constitution. Such a limited holding would properly preserve this constitutional right without doing inordinate harm to the authority of the Governor to lawfully exercise the veto authority under Article III, section 8 of the Florida Constitution.