OSTERHAUS, J.
The International Association of Firefighters Local S-20 appeals a decision of the Public Employees Relations Commission dismissing an unfair labor charge against the Governor for vetoing a proviso in the General Appropriations Act (GAA). Had the proviso been approved, it would have given a raise to’ firefighters who work for the State. We affirm because the Governor has constitutional authority to veto specific appropriations of the GAA, and because the Legislature ultimately resolved the impasse by maintaining the status quo.
I.
Article I, § 6 of the Florida Constitution, along with its enabling statute, chapter 447, Florida Statutes, recognizes state employees’ right to collectively bargain. State v. Fla. Police Benevolent Ass’n, 613 So.2d 415, 418 (Fla. 1992). In the case *738 of state employees, the Governor is considered the public employer in collective bargaining negotiations. § 447.203(2), Fla. Stat. As'part of the statute, § 447.403 sets forth the process by which state employees and the Governor, must resolve impasses. The Legislature is responsible for resolving impasse issues. § 447.403(2)(b), Fla. Stat. When parties reach an impasse, the Legislature must convene a committee to review impasse issues and recommend- a resolution to the Legislature. §'447.403(6)(a), Fla. Stat. Once the.Legislature, takes action on the resolution, the parties, are bound. § 447.403(5)(b), Fla. Stat. ;
Appellant Local S-20 is the duly authorized bargaining agent for a unit of firefighters employed by the State of Florida. Local S-20 and the Governor bargained over wages, hours, and conditions of employment for fiscal year 2015-2016, and reached an impasse on several issues. Most notably, Appellant sought a $1500 per member raise. Upon reaching impasse, the parties submitted their positions to the Joint Select Committee on Collective Bargaining as required by the statute for resolving impasses. After the Committee completed its work, the Legislature passed the GAA, which included proviso language resolving the impasse by granting a $2000 per member pay raise, an even larger raise than Appellant had sought. The Legislature also passed a catch-all impasse provision in chapter 2015-223, Laws of Florida, providing for the resolution of unaddressed impasses “by maintaining the status quo under the applicable current bargaining agreement.” When the GAA, was presented to the .Governor, he vetoed the $2000 raise-specific proviso. After the Legislature took no subsequent action to override the veto, the impasse was resolved by maintaining the status quo.
When the State presented the bargaining agreement without including the raise, Appellant filed an unfair labor practice charge claiming that the Governor lacked veto authority. But the. Public Employees Relations Commission dismissed the charge. It rejected Appellant’s claim that the Governor was powerless to veto the raise and approved the State’s presentation of a bargaining agreement that maintained wages at the status quo. .
II.
This case involves the Governor’s authority to review and veto public employee, collective bargaining-related matters in the GAA, The Legislature tried to resolve a wage-related impasse in this case by including a $2000 raise in a specific appropriation within the GAA. Because the GAA is not self-executing, however, the act went to the Governor for approval.
The Florida Constitution is clear that the Governor may sign the GAA, veto it, or veto specific appropriations within the act. Article III, § 8, Fla. Const. (“The" governor may veto any specific appropriation in a general appropriation' bill .... ”). In this case, if the Governor approved the $2000 raise within the GÁA, then the impasse would be resolved. However, if the Governor vetoed either the entire GAA, or the raise-specific proviso within the .GÁÁ, then the impasse would remain within the Legislature’s purview to resolve by some other means.
The Governor vetoed the specific appropriation here and Appellant takes issue with it. Appellant does not dispute the Legislature’s attempt to resolve, impasses via the GAA, in the first instance, but argues that the Governor was required to approve the raise-specific appropriation in the GAA. See § 447.403(5)(b), Fla. Stat. (“Any actions taken by the Legislature shall bind the parties ... .■”). Based pri *739 marily on a statute, Appellant asks us to recognize a limitation on the Governor’s constitutional authority to review the GAA, even though the Constitution explicitly allows the Governor to veto the GAA or “any specific appropriation in a general appropriation bill.” Article III, § 8, Fla. Const, (emphasis added). We cannot accept Appellant’s invitation. The Florida Constitution clearly articulates the Governor’s authority to veto the GAA, or specific appropriations therein. Id It authorized him to veto the raise appropriation here. See Brown v. Firestone, 382 So.2d 654 (Fla. 1980) (setting forth parameters regarding the exercise of the Governor’s veto power). That Appellant’s members possess constitutional collective bargaining rights does not alter the Governor’s constitutional authority with respect to the GAA. See Fla. Police Benevolent Ass’n, 613 So.2d at 418-19 (refusing to elevate the collective bargaining rights of public employees and thus alter “years of strict adherence to the separation of powers doctrine”). The Governor’s action in this case comported with his constitutional authority.
Moreover, the Governor’s veto did not displace the Legislature’s power to resolve the impasse in this case. After the veto, the Legislature retained final authority under § 447.403(5)(b) to resolve the wage impasse, and it did so here. The Legislature knew two things before attempting to resolve the impasse through the GÁA: (Í) that the Governor could veto specific appropriations, and (2) that it could override any veto. After the Governor exercised his veto authority in this case, nothing stopped the Legislature from exercising its constitutional authority to override his veto. See Article III, § 8(c), Fla. Const. A legislative override would have granted state firefighters the $2000 per employee raise they sought. But instead, the Legislature accepted the status quo. In fact, the Legislature enacted a separate act providing a catch-all impasse resolution provision that became law. Chapter 2015-223, § 1, Laws of Florida, provided for unaddressed impasses to be resolved “by otherwise maintaining the status quo under the language of the applicable current bargaining agreement.” The Legislature effectively resolved the impasse by choosing not to override the Governor’s Veto and maintaining the status quo.
Appellant argues that we should follow Dade County Police Benevolent Association v. Miami-Dade County Board of County Commissioners, 160 So.3d 482, 483 (Fla. 1st DCA 2015), in which we held that a local executive branch official could not veto the legislative body’s resolution of an impasse. But that case presented a different scenario that didn’t involve restricting the Governor’s constitutional authority to veto appropriations. The mayor in that case did not have constitutional authority to veto the impasse resolution and that veto violated Florida’s collective' bargaining statute. Here, by contrast, the Governor possessed explicit constitutional authority to veto appropriations within the GAA. See Art. III, § 8(a), Fla. Const. And so, while it is true that public employees possess important, constitutionally protected collective bargaining rights, the Legislature cannot force the Governor’s hand to approve and sign the GAA, or specific appropriations therein. Fla. Police Benevolent Ass’n, 613 So.2d at 418—19 (warning of separation of powers encroachments). The Legislature here retained and exercised its ultimate authority to resolve the impasse after the Governor’s veto, but chose not to override the veto and to maintain the status quo.
III.
The decision of the Public Employees Relations Commission is AFFIRMED.
JAY, J., CONCURS; B.L. THOMAS, J., DISSENTS WITH OPINION.